UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

JOSE LUIS MORALES,

    Plaintiff,

  v.

ROBERT HOREL; MAUREEN McLEAN; J. WOLF; SUE RISENHOOVER; JOSEPH KRAVITZ; DR.GREGORY DUNCAN; DR. J. FRATKIN; DR. DONALD POMPAN; R. PIMENTEL; and Does 1-4,

    Defendants.
                 /

No. C 08-4441 PJH (PR)

**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT**

  This is a civil rights case filed pro se by a state prisoner. The defendants who have been served have moved for summary judgment, plaintiff has opposed the motions, and defendants have filed replies. The motions are ready for decision.

## BACKGROUND

  In his complaint plaintiff contends that defendants were deliberately indifferent to his serious medical need for orthopedic surgery on his injured right knee. In its initial review order the court dismissed plaintiff's claims against defendants Horel, McLean, Kravitz, and Pimentel for failure to state a claim. Service was ordered on Pompan, Wolf, Risenhoover, Fratkin, and Duncan. Pompan, Risenhoover and Duncan have been served and have moved for summary judgment.

## DISCUSSION

**I. Standard of Review**

  Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins.  *Id.*

## II.     Standard for Medical Claims

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  *Id.* at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  *Id.*  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment.  *Id.* at 1059-60.

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps

2

to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he or she "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

## III.     Motion for Summary Judgment by Pompan and Risenhoover

No material evidentiary facts are in dispute, although the parties disagree about the conclusions to be drawn from them.

### A.     Dr. Pompan

Plaintiff's right knee "locked up" on May 12, 2003, when he was playing handball. According to the notes of the doctor who saw him that day, plaintiff's knee had been locking up for some time, and had been doing so more frequently prior to May 12. This time plaintiff was unable to get it to return to normal movement, so he was seen by the medical department. A doctor who is not a defendant diagnosed a "torn meniscus." He ordered palliative treatment and an orthopedic consultation.

Defendant Pompan is a board-certified orthopedic surgeon. His first contact with plaintiff was when he examined him on June 17, 2003. Dr. Pompan noted that plaintiff had a full range of motion in the knee, diagnosed a "probable lateral-meniscal tear and a possible Anterior-Cruciate-Ligament tear." Decl. Pompan ¶ 3. He recommended an MRI. The MRI was performed on July 24, 2003. *Id.* at Ex. B. The radiologist reported "[n]o definite meniscal tear. A focus of altered signal in the posterior horn of the lateral meniscus is thought to represent degenerative signal change with only a low probability of a tear." *Id.* No ligament damage was found. *Id.*

Dr. Pompan says in his declaration that because the MRI did not show a definite meniscus tear, he decided on conservative treatment with knee-strengthening exercises. *Id.* at ¶ 4. He noted in the medical record that if plaintiff still had pain in six weeks he would consider arthroscopic surgery. *Id.* Dr. Pompan saw plaintiff again on October 7, 2003, and

3

because he complained of continued pain, diagnosed a "likely" meniscal tear. *Id.* at ¶ 5. He recommended arthroscopy and submitted a request for service form to authorize it. *Id.* Plaintiff was transferred to Pelican Bay State Prison on December 10, 2003. Dr. Pompan did not see him after October 7.

Although plaintiff contends in his opposition that he is an avid sports fan and has seen on television reports of athletes receiving prompt arthroscopic surgery on damaged knees and returning to competition quickly, this is not sufficient to generate a genuine issue of material fact as to whether Dr. Pompan was deliberately indifferent in electing conservative treatment. Particularly considering the indecisive nature of the MRI – in fact, it deprecated the possibility of a torn meniscus – Dr. Pompan's election of conservative treatment was appropriate, and by asking the MAR to approve arthroscopic surgery, he took the necessary steps to see that the injury was treated once diagnosed. On the undisputed facts Dr. Pompan was not deliberately indifferent.

### B.     Nurse Risenhoover

Defendant Risenhoover is a nurse practitioner at Pelican Bay State Prison. She saw plaintiff on February 19, 2004, for his complaints of knee pain. Decl. Risenhoover ¶ 4. She advised him to avoid strenuous exercise and gave him an order for insoles to cushion impact on his knee. *Id.* That same day she also asked the Medical Advisory Review committee, which reviews requests for medical care and makes recommendations, to refer plaintiff to an orthopedist. *Id.*

Risenhoover next saw plaintiff on April 30, 2004, for his complaint that his knee was "locking up." *Id.* at ¶ 5. His complaints at this visit, at least as recorded in Risenhoover's notes, were relatively mild – for instance, he said that his knee was not swelling, and that the problem did not interfere with his ability to "rest or sleep." *Id.*

On June 9, 2004, plaintiff saw orthopedist Dr. Lau; after that, on June 22, 2004, Risenhoover saw him because his knee had locked up for three hours. *Id.* at ¶ 7. She advised him to avoid strenuous exercise that would stress his knee. *Id.* Risenhoover then saw plaintiff on July 12, 2004, July 23, 2004, August 20, 2004, September 20, 2004,

4

November 10, 2004, December 17, 2004, and February 18, 2005, the last visit being three days after he had the arthroscopic surgery. *Id. at ¶. ¶ 8-14.* In this period the MAR requested more information about the frequency of the knee locking, plaintiff visited orthopedists Lau and Duncan, the MAR approved arthroscopic surgery, Dr. Duncan gave plaintiff a steroid injection to palliate the problem, a new MRI was performed, and the surgery itself was performed. *Id.*

It is apparent from this recitation that Risenhoover saw plaintiff frequently, obtained referrals to the appropriate specialists, and took the steps necessary to gain approval for the arthroscopic surgery he wanted and needed. On the undisputed facts, she was not deliberately indifferent.

## IV. Motion for Summary Judgment by Duncan

Dr. Duncan was the orthopedist who operated on plaintiff's knee. He has filed a separate motion for summary judgment. Dr. Duncan saw plaintiff on October 27, 2004, and recommended arthroscopic surgery. Decl. Duncan ¶ 4. On November 24, 2004, while awaiting approval, Dr. Duncan gave plaintiff a steroid injection. *Id.* On December 8, 2004, the surgery having been approved, Dr. Duncan obtained informed consent of plaintiff for the surgery; it was performed on February 15, 2005. *Id.* Dr. Duncan has also provided the declaration of Dr. John Toton, a board-certified orthopedic surgeon, in which Dr. Toton says that Dr. Duncan's care of plaintiff was appropriate, well within the standard of care, and not indifferent. Decl. Toton.

On these undisputed facts, Dr. Duncan was not deliberately indifferent. His motion for summary judgment will be granted.

## V. Discovery Issue

In his opposition to Dr. Duncan's motion for summary judgment, plaintiff says that Dr. Duncan has not responded to discovery requests and cites cited Rule 56(f) of the Federal Rules of Civil Procedure, which allows a court to continue or deny a motion for summary judgment if the non-movant is unable to procure materials necessary to resist the motion. In his reply, Dr. Duncan says that he in fact answered plaintiffs two sets of

1  interrogatories, and provides a declaration by counsel and copies of certificates of service
2  to support that contention.  Plaintiff has not asked permission to file a response to Dr.
3  Duncan's contention that he did in fact answer the interrogatories, so the court must
4  conclude that Dr. Duncan is correct.  There thus is no need to continue or deny the motion
5  to allow discovery.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment (documents 19 and 24 on the docket) are **GRANTED**.  Plaintiff's claims against defendants Wolf and Fratkin are **DISMISSED** without prejudice for failure to obtain service.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  March 26, 2010.

PHYLLIS J. HAMILTON
United States District Judge

P:\PRO-SE\PJH\CR.08\MORALES4441.MSJ.wpd

6